**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

JULY 30, 2026

*Signature*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 30, 2026

*Signature*

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 104816-5 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| SCOTT JOSEPH PERRIN, | ) | |
| | ) | Filed: July 30, 2026 |
| Respondent. | ) | |
| | ) | |

GONZÁLEZ, J.— Felony sentencing in Washington is largely governed by the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW.  Under the SRA, sentences are generally dictated by the seriousness of the offense, the criminal history of the person sentenced, and the presence of statutory enhancements.  *See* RCW 9.94A.010, .510, .530, .535.  Under certain circumstances, the sentencing judge may depart from that standard range or impose a variety of sentencing alternatives.  RCW 9.94A.533, .650-.695.  This case concerns one of those sentencing alternatives.

On the recommendation of the 2019 Criminal Sentencing Task Force, the Washington Legislature recently created a mental health sentencing alternative.

RCW 9.94A.695.  This alternative is available when, among other things, the person being sentenced has been diagnosed with a serious mental illness, agrees to get mental health treatment, and proposes an adequate treatment plan with willing providers.  Those convicted of serious violent offenses or sex offenses are not eligible.  Once a judge concludes a mental health sentencing alternative is appropriate, "the court shall waive imposition of the sentence within the standard range."  RCW 9.94A.695(4).

Decades ago, the legislature adopted the Hard Time for Armed Crime initiative.  This initiative imposes sentencing enhancements for most crimes that involved a deadly weapon.  These sentencing enhancements are generally mandatory and generally add time to a person's standard range sentence.  RCW 9.94A.533(4).

We must decide whether a judge who imposes a mental health sentencing alternative on a person found to have committed a felony with a deadly weapon is required to impose confinement time on a deadly weapon sentencing enhancement.  We conclude they are not.  Accordingly, we affirm.

### BACKGROUND

Scott Perrin left harassing messages for a woman, destroyed Troy Brisby's bicycle, and assaulted Brisby with a sword.  Perrin was charged with and tried for first degree assault, malicious mischief, felony harassment, and second degree

theft.  The jury found Perrin guilty of second degree assault with a deadly weapon, felony harassment, and third degree theft.

Perrin moved for a mental health sentencing alternative on his felony charges.  The sentencing judge granted the motion and, consistent with that motion, imposed 36 months of community custody.  The sentencing judge did not order any confinement time on the deadly weapon enhancement.  *Id.*

The State appealed on several grounds, some of which are not before us. Relevantly, the State argued that the trial court was obligated to impose confinement time on the deadly weapon enhancement.  The Court of Appeals concluded that the SRA was ambiguous, applied the rule of lenity, and affirmed the trial court's decision not to impose confinement time on the deadly weapon enhancement.  *State v. Perrin*, 35 Wn. App. 2d 754, 768, 578 P.3d 356 (2025).

The State successfully sought review on whether the sentencing court erred by not imposing confinement time on the deadly weapon enhancement.  The American Civil Liberties Union of Washington Foundation, Disability Rights Washington, and the Washington Defender Association (ACLU-WA) have filed an amicus brief in support of Perrin.

ANALYSIS

Determining whether the sentencing court was obligated to impose confinement time on the deadly weapon finding requires us to interpret the SRA.

3

Our review of the SRA is de novo. *See State v. Williams*, 171 Wn.2d 474, 476, 251 P.3d 877 (2011) (citing *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003)). Our primary duty in interpreting statutes is to discern and implement the legislature's intent. *Id.* (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). We begin with the plain language and the plain meaning of the statute. *J.P.*, 149 Wn.2d at 450. To do so, we consider all that the legislature has said in both the particular statute and related statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

We harmonize statutes whenever possible, beginning with the assumption that the legislature does not intend to create inconsistencies. *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (citing *State v. Bash*, 130 Wn.2d 594, 602, 925 P.2d 978 (1996)). When the legislature's meaning and intent is unclear, we may resort to the canons of statutory construction. *See J.P.*, 149 Wn.2d at 451-52. Generally, when two statutory provisions conflict, the most recently enacted prevails unless the earlier is clearer and more specific than the latter. *Id.* at 452. When the statutory language is ambiguous, we may apply the rule of lenity. *State v. Lewis*, 5 Wn.3d 114, 121, 571 P.3d 1245 (2025). "Under the rule of lenity, ambiguous criminal laws are strictly construed in favor of the defendant." *Id.* (citing *State v. Evans*, 177 Wn.2d 186, 193, 298 P.3d 724 (2013)).

4

The SRA has required weapons enhancements in some circumstances since 1983 and in almost all circumstances since 1995. LAWS OF 1983, ch. 115, § 2; LAWS OF 1995, ch. 129, § 2(3). Most relevantly, it currently provides:

> The following additional times shall be added to the standard sentence range for felony crimes . . . :
>
> (b) One year for any felony defined under any law as a class B felony or with a statutory maximum sentence of ten years, or both, and not covered under (f) of this subsection;
>
> . . . .
>
> (e) Notwithstanding any other provision of law, all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

RCW 9.94A.533(4). The State argues that this statute unambiguously requires the trial court judge to impose confinement time on a deadly weapon enhancement.

Under the mental health sentencing alternative statute:

> If the sentencing court determines that a sentence under this section is appropriate, *the court shall waive imposition of the sentence within the standard range.*

RCW 9.94A.695(4) (emphasis added).

The State contends that we should harmonize these two statutes by requiring the defendant to serve time in confinement for the deadly weapon enhancement followed by community custody under the mental health sentencing alternative. Perrin essentially contends that once determined, a deadly weapon enhancement is part of a standard range sentence and thus must be waived when a mental health

5

sentencing alternative is imposed. In the alternative, he argues that to the extent the SRA is ambiguous on this point, we should apply the rule of lenity in his favor.

We recognize our case law has inconsistently described a deadly weapon enhancement as both part and not part of a standard range sentence. *Compare In re Post Sentencing Rev. of Charles*, 135 Wn.2d 239, 242, 955 P.2d 798 (1998) ("On the assault in the third degree count, the court imposed a 12-month standard range sentence plus an 18-month deadly weapon enhancement, for a total of 30 months."), *with State v. Silva-Baltazar*, 125 Wn.2d 472, 475, 886 P.2d 138 (1994) ("An enhancement increases the presumptive or standard sentence."). However, recent cases that have examined the question have concluded that a statutory enhancement is part of a standard range sentence.

Our opinion in *Yancey* makes that clear. *State v. Yancey*, 193 Wn.2d 26, 34, 434 P.3d 518 (2019). *Yancey* concerned eligibility for a residential drug offender sentencing alternative (DOSA). Whether a person is eligible for a residential or prison-based DOSA turns on the midpoint of their standard range sentence. *Id.* at 29 (citing former RCW 9.94A.660(3) (2016)).[1] Without enhancements, the midpoint of Yancey's standard range sentence was low enough to qualify him for a residential DOSA. *Id.* But because the "enhancement was subsumed into

---

[1] At the time of *Yancey*, a DOSA was available if the midpoint was 24 months or fewer. Since then, the legislature has expanded eligibility to those whose midpoint is 26 months or fewer. LAWS OF 2020, ch. 252, § 1(3).

Yancey's standard range," Yancey's standard range sentence was too long and he was not eligible. *Id.* at 34.

Simply put, once determined, an enhancement becomes part of a person's standard range sentence. *Id.* Thus, this deadly weapon enhancement was part of Perrin's standard range sentence and was properly waived by the trial court.

We will briefly consider the remaining arguments. First, the State calls our attention to cases that have described the deadly weapon enhancement as mandatory. Suppl. Br. of Appellant at 14-16 (citing *State v. Brown*, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled in part by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017)). But none of these cases examined whether an enhancement remained mandatory when it is part of a standard range sentence that has been waived by the sentencing court under a sentencing alternative. These cases do not resolve the question before us.

Second, the State emphasizes that the deadly weapon enhancement specifically says, "Notwithstanding any other provision of law, all deadly weapon enhancements under this section are mandatory." RCW 9.94A.533(4)(e). It suggests that this "notwithstanding" language clearly indicates the legislature intended the deadly weapon enhancement to always be imposed regardless of other statutes. We disagree.

We consider all that the legislature has said in the relevant and related statutes when determining the legislature's intent. *See Campbell & Gwinn*, 146 Wn.2d at 9. "Notwithstanding" is a word, like any other, that must be read in the context of all the legislature has said on the subject. *See id.* We have implicitly rejected the argument that the deadly weapon enhancement must be applied consecutively in every case when to do so would undermine other provisions of the SRA. For example, we found the "notwithstanding" language did not prevent a sentencing judge from ordering firearm offenses be served concurrently under RCW 9.94A.535 as part of an exceptional downward departure from the standard range when the presumptive sentence was clearly excessive in light of the purpose of the SRA. *State v. McFarland*, 189 Wn.2d 47, 53, 399 P.3d 1106 (2017) (quoting *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 327-28 166 P.3d 677 (2007)).

Third, the State contends the legislature is concerned about both public safety and rehabilitation, and that these goals are best met by imposing confinement time on the deadly weapon enhancement. It calls this provision of the statute to our attention:

> (6) For a defendant participating in this sentencing alternative, the court and correctional facility may delay the defendant's release from total confinement in order to facilitate adherence to the defendant's treatment plan. This may include delaying release in order to:
> (a) Allow a defendant to transfer directly to an inpatient treatment facility or supportive housing provider;

(b) Ensure appropriate transportation is established and available; or
(c) Release the defendant during business hours on a weekday when services are available.

RCW 9.94A.695.

While .695(6) is not directly before us (as Perrin's sentencing judge did not apply it), plainly read, it applies when a person is going to be transferred directly from confinement to an inpatient treatment facility. It does not suggest that the legislature contemplated a person receiving a mental health sentencing alternative would generally spend time in confinement.

Fourth, the State suggests the mental health sentencing alternative is the more general statute and the deadly weapon enhancement statute is the more specific one. We find these statutes are so different that we cannot discern which one is more general and which one is more specific. But even if there is a conflict between these two provisions, we find they can be harmonized by treating the deadly weapon enhancement, once determined, as part of the standard range sentence that is waived once a mental health sentencing alternative is imposed.

Amicus argues that empowering a judge to waive prison time accords with the legislative history and factual context of the mental health sentencing alternative. We agree. Creating the mental health sentencing alternative was one of 47 consensus recommendations of the 2019 Criminal Sentencing Task Force established by the legislature. FINAL B. REP. ON SECOND SUBSTITUTE S.B. 5293, at

9

2, 67th Leg., Reg. Sess. (Wash. 2021).  The task force recommended the alternative as an important step toward "implement[ing] public health options for addressing conduct that endangers public safety to which mental health or cognitive conditions or brain injuries are a factor."  WASH. STATE CRIM. SENT'G TASK FORCE, DECEMBER 2020 REPORT 17 [https://perma.cc/7Z9L-5TDS].

The mental health sentencing alternative statute was enacted against the backdrop of the *Trueblood* litigation, which the legislature has been briefed on and regularly legislates about.  *See* LAWS OF 2019, ch. 326, § 1 (implementing portions of the *Trueblood* settlement); LAWS OF 2021, ch. 334, § 202(h) (appropriation to partially fund *Trueblood* settlement); *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (9th Cir. 2016). While *Trueblood* directly concerned pretrial competency and restoration services, the court observed that jails and prisons were unsuitable places to house people with serious mental illnesses generally:

> Jails are inherently punitive institutions, and are not designed or administered so as to provide for the needs of the mentally ill. A correctional environment, calibrated to provide safety and order, is incongruous with the particular needs of the mentally ill, and results in people with confirmed or suspected mental illness spending more time in solitary confinement, where their mental health further deteriorates.

101 F. Supp. 3d at 1017.

Similarly, the Office of the Corrections Ombuds has also recently observed that mental health services in prison are overwhelmed and frequently delayed.  Br.

10

of Amici Curiae ACLU-WA at 6-7 (quoting Elisabeth Kingsbury, Off. of Corr. Ombuds, Systemic Report: Mental Health Access & Services, 6 (June 2021)). The ACLU-WA amici brief also cites sources that suggest psychiatric medications are difficult to obtain in prison even with an existing prescription. *Id.* at 8 (citing Kingbury, *supra*, at 7 n.5; Kimberly Mosolf, Disability Rts. Wash., Prescription for Change: Access to Medication for People with Disabilities in Washington's Jails 11-12 (Oct. 2016)). The amici brief also suggests that less than one-third of jails offer any form of therapeutic treatment. *Id.* at 9-10 (citing Kayley Bebber & Kimberly Mosolf, Disability Rts. Wash. Wasted Time: Lack of Access to Programming for Inmates with Disabilities in Washington's County Jails 13 (Feb. 2017)). Disability Rights Washington reports that frequently, mentally ill prisoners will be placed in what amounts to solitary confinement, exacerbating mental illness. *Id.* at 13 (quoting Rachael Seevers, Disability Rts. Wash., The Many Faces of Solitary Confinement in Washington Prisons 3 (Dec. 2022)). Taken together, these sources suggest that mental health treatment is often not available in prison.

The purpose of the SRA is to

> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
> (2) Promote respect for the law by providing punishment which is just;
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
> (4) Protect the public;

(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.  Given the factual background recited above, none of these legislative purposes are served by imposing prison time on a person who is seriously mentally ill.  This also supports our conclusion that the legislature intended to waive prison time.

To the extent the SRA is ambiguous, the rule of lenity would lead us to the same result.  "Under the rule of lenity, ambiguous criminal laws are strictly construed in favor of the defendant" and "we will interpret an ambiguous penal statute adversely to the defendant only if statutory construction 'clearly establishes' that the legislature intended such an interpretation." *Lewis*, 5 Wn.3d at 121 (citing *Evans*, 177 Wn.2d at 193); *Evans*, 177 Wn.2d at 193 (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009)).  To the extent there is any ambiguity here, the Court of Appeals did not err in resolving the ambiguity in Perrin's favor.

CONCLUSION

Under the SRA, a deadly weapon enhancement, once determined, becomes part of the standard range sentence.  The sentencing court properly waived Perrin's

standard range sentence when it imposed the mental health sentencing alternative.

Accordingly, we affirm.

González, J.

WE CONCUR:

Stephens, C.J.

Whitener, J.

Johnson, J.

Mungia, J.

Gordon McCloud, J.

Melody, J.

Montoya-Lewis, J.

Angelis, J.